# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2332 | **DATE** | 1/19/2001 |
| **CASE TITLE** | Green Tree Financial Corporation vs. Honeywood Development Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss second amended complaint [85] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 7 number of notices | Document Number |
| ✓ | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 2 4 2001 date docketed | |
| | Notified counsel by telephone. | | | 89 |
| | Docketing to mail notices. | | 15 docketing deputy initials | |
| | Mail AO 450 form. | ⊘ | | |
| | Copy to judge/magistrate judge. | DOCKETING | 1/22/2001 date mailed notice | |
| MD | courtroom deputy's initials | 01 JAN 23 PM 3:10 | MD7 mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREEN TREE FINANCIAL CORPORATION )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HONEYWOOD DEVELOPMENT CORP., )<br>et al., )<br>)<br>Defendants. ) | Case No. 98 C 2332 |

## MEMORANDUM OPINION AND ORDER

Defendants Honeywood Development Corporation ("Honeywood") and David Guel ("Guel"), the owner and chief executive officer of Honeywood, have filed a motion to dismiss the Second Amended Complaint of plaintiff, Green Tree Financial Corporation ("Green Tree") on the basis that res judicata and collateral estoppel, resulting from a decision rendered in an arbitration proceeding, bar Green Tree's claims. The court, in a December 22, 2000 ruling, initially treated defendants' motion as one for summary judgment and ordered the parties to file Local Rule 56.1 materials. However, for the reasons that have been discussed on the record in open court,[1] the court has reconsidered and now decides defendants' motion as originally filed

---

[1] One factor is that Mr. Morgan, defendants' attorney, was given the opportunity at a status hearing to discuss his view of the arbitration record and whether or not for issue preclusion (collateral estoppel) purposes he desired to present evidence that the issues discussed in the arbitration were the same as in the instant case. He represented that he did not think the issues were the same, but that that was not germane because what mattered was what was at issue in the pleadings (i.e. what was alleged in the arbitration). (Tr. Jan. 9, 2001, at 1002-03.) Another consideration has been the short amount of time until the trial, which had been set to begin on

1

without giving defendants further opportunity to support their motion with an expanded factual record. For the reasons set forth herein, the court denies defendants' motion.

BACKGROUND

This case was filed in April of 1998, and the operative pleading is the Second Amended Complaint filed in May of 1998 in which Green Tree asserts claims against several defendants, including Honeywood and Guel. Against Honeywood and Guel, Green Tree alleges violations of the federal RICO statute, 18 U.S.C. §§ 1962(c)-(d) (Count I and II), common law fraud (Count VII), common law fraud-conspiracy (Count VIII), violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count X), and requests an order imposing a constructive trust (Count XI). Green Tree asserts additional claims against Guel under the federal RICO statute, 18 U.S.C. §§ 1962(a)-(b) and (d) (Count III, IV, V, VI).

Green Tree, a provider of financial services, alleges that during 1996 and 1997 Honeywood, a property management company doing business in Illinois, and its employees/agents Guel, John Wojcik and Anthony Coleman, targeted individuals to invest in residential real estate on the South and Southeast sides of Chicago, which were in a poor condition, as "community redevelopment." Honeywood held out the promise that the investors would be "joint venturers" with Honeywood and, in exchange for their credit, Honeywood would handle all financing matters and the investors would receive a certain amount of money per property. (*See* Second Amended Complaint, ¶¶ 19-21). Green Tree alleges that the properties selected for financing were nearly worthless, but, in order to obtain financing from Green Tree,

---

January 23, 2001. The date has since been vacated, however.

Guel and Wojcik, together with Grant Mortgage Services, Kevin Anastasia, EQ (a loan originator and underwriter in Chicago) and EQ employees Allison Bogash, Thomas Mullins, Ted Sledzinski and Tom Welch prepared false, misleading and incomplete loan applications seeking loans to be secured by mortgages, and that Steven Johnson prepared false appraisals. (*Id.* at ¶¶ 23-27.)

Green Tree alleges that the above-named individuals and entities comprised the "Loan Ring," which misrepresented or omitted material facts about each loan transaction, for example, that the properties were leased when they were vacant, that individual loan applicants owned the properties after closing although they were purportedly "joint venturers" with Honeywood, that individual investors received the balance of proceeds of the loans when Honeywood received them, that the loans were "refinances" instead of purchases, and that the appraisals were false. Green Tree alleged that EQ and its employees approved the loans knowing of the schemes and false information and knowing that they would immediately sell them to Green Tree at a premium, and that Green Tree expended over $1.9 million in the purchase of loans and fees for loans that are uncollectible and secured by near-worthless collateral in the properties. (*Id.* at ¶¶ 29-32, 48.)

Prior to filing this lawsuit, Green Tree initiated an arbitration against EQ by serving a Demand for Arbitration ("Demand") on EQ in February 1998 before the American Arbitration Association ("AAA") pursuant to the terms of its Mortgage Correspondent Agreement ("Agreement") with EQ, dated August 19, 1996. (*See id.* at 4; Ex. 2, Defs.' Mem. in Support of Motion to Dismiss.) The Demand alleged the same fraudulent scheme as in the federal

3

complaint and made claims against EQ for breach of contract, fraudulent and negligent misrepresentation, fraudulent concealment and violations of RICO. (*See* Ex. 2, Defs.' Mem. in Support of Motion to Dismiss.) In June of 1998, defendants Bogash, Mullins, Sledzinski and Welch moved to stay the federal proceedings, or to stay the proceedings as to them, pending the conclusion of the arbitration before the AAA. Instead, Judge Milton I. Shadur of this court, to whom this case was then assigned, apparently on his own motion, dismissed defendants Bogash, Mullins, Sledzinski and Welch from the federal action without prejudice to a possible motion to reinstate them solely for the purposes of any award that may be entered in the arbitration and, thus, denied the motion to stay as moot. (*See* Minute Order, June 16, 1998.)

Subsequently, on July 12, 2000, the AAA Panel ("Panel") issued an "order and decision in connection with the liability phase of the arbitration" ("Order"). (*Id.*) In the Order, the Panel concluded that EQ had breached its agreement with Green Tree in that EQ "did not originate the subject loans in a prudent manner consistent with the normal and customary practices generally followed by businesses engaged in the origination of their own or others' loans." (*Id.*) As to "all other claims made in the arbitration," however, the Panel found that "the evidence was not sufficient to satisfy the standards required to establish these claims under applicable law." (*Id.*) The Order does not identify the "other claims" nor refer to specific claims in the Demand. In the Order, the Panel also requested a conference with the parties "to discuss further proceedings in this matter, including the damages phase of this arbitration." (*Id.*)

On October 19, 2000, Honeywood and Guel filed the instant motion under Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss Green Tree's Second Amended Complaint, arguing

4

that the decision of the Panel has preclusive effect both by means of res judicata (claim preclusion) and collateral estoppel (issue preclusion) on the Green Tree's claims against defendants in the instant federal proceeding.

MOTION TO DISMISS STANDARDS[2]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 101, 102 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996).

For purposes of this motion, the court has considered all briefs on the matter, including

---

[2] Guel has already answered the Second Amended Complaint and thus his motion is more properly brought as a Rule 12(c) motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). In any event, the standard of review under Rule 12(c) is "the same standard as a motion to dismiss under Rule 12(b)." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

those untimely filed,[3] and the court takes judicial notice of the Demand and Order.[4] In addition, the court was provided, yesterday, with a copy of an "Award of Arbitrator" made in the arbitration proceedings between Green Tree and EQ. The Award (signed December 28, 2000 by two arbitrators and January 2, 2001 by the third), incorporates the July 12, 2000 Order "in its entirety," and provides a damages figure in favor of plaintiff. It also states: "This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are, hereby denied." (American Arbitration Association, Award of Arbitrator, *In the Matter of the Arbitration between Green Tree Financial Corporation vs. EQ Financial Inc. et al.*, 51 Y 104 00081 98).

## DISCUSSION

Res judicata (claim preclusion) "refers to the doctrine that bars litigation of claims and

---

[3]Defendants, without leave of court, filed an untimely reply on December 26, 2000. The same day, they also filed their formal motion to dismiss that this court had previously noted was missing from their memorandum in support of the motion to dismiss filed in October.

[4]The Demand and Order are not referred to in the Second Amended Complaint; thus, this court will only consider them on a motion to dismiss if they are subject to judicial notice. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1974, 1080 (7th Cir. 1997). Courts have taken judicial notice of arbitration decisions, *see Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1326 n.3 (8th Cir. 1994); *Yerkovich v. MCA Inc.*, 11 F. Supp. 2d 1167, 1169 n.2 (C.D. Cal. 1997), and the Seventh Circuit has permitted arbitrators to take judicial notice of other arbitrators' decisions. *Consolidation Coal Co. v. United Mine Workers of America*, 213 F.3d 404, 407 (7th Cir. 2000) (decisions of arbitrators "were arbitral equivalents of judicial decisions, of which, of course, a court can take judicial notice."). In any event, the court is not taking judicial notice of the Order for the purpose of establishing the truth of matters asserted in the arbitration. *General Elec. Capital Corp.*, 128 F.3d at 1081 n.6 (noting conservative view of judicial notice and citing, inter alia, *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("a court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings'")).

issues that were raised or could have been raised in a prior action between the same parties or their privies that has been resolved by a final judgment by a court of competent jurisdiction." *Jones v. City of Alton*, 757 F.2d 878, 879 n.1 (7th Cir. 1985). To establish a defense of res judicata, defendants must show (1) identity of claims; (2) identity of parties; and (3) a prior final judgment on the merits. *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 952 (7th Cir. 2000). Collateral estoppel (issue preclusion), on the other hand, forecloses "relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995) (internal quotations omitted). To establish the defense of collateral estoppel, defendants must show that "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *Id.* (citations omitted). Defendants have the burden of establishing each element of collateral estoppel. *Id.* at 308. A court has discretion in determining whether collateral estoppel applies. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S. Ct. 645, 652, 58 L. Ed. 552 (1979) (noting that in cases of offensive collateral estoppel "where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair . . . , a trial judge should not allow the use of offensive collateral estoppel"); *Ross-Berger Cos. v. Equitable Life Assur. Society of the United States*, 872 F.2d 1331, 1337 (7th Cir. 1989).

7

Standard for Giving Preclusive Effect to Arbitration Decisions

Defendants have not set forth the standard that this court should use in determining whether an arbitration decision, as opposed to a judicial decision from another federal or state court, should be given preclusive effect. *See* 28 U.S.C. § 1783 (Full Faith and Credit Statute requiring courts to give preclusive effect to "judicial proceedings"); *McDonald v. City of West Branch*, 466 U.S. 284, 288, 104 S. Ct. 1799, 80 L.Ed. 2d 302 (1984) ("Arbitration is not a 'judicial proceeding' and, therefore, § 1738 does not apply to arbitration awards."). The Seventh Circuit has recognized that it is "not at all clear that arbitration awards could be given a res judicata or collateral estoppel effect in a related judicial proceeding." *Giles v. Blunt, Ellis & Loewi, Inc.*, 845 F.2d 131, 134-35 (7th Cir. 1988) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)). Where it is not mandated by statute, preclusive effect is determined by judicially established rules of preclusion. *McDonald*, 466 U.S. at 289 ("Because federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award, any rule of preclusion would necessarily be judicially-fashioned."); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 1988 WL 56287, *2 (N.D. Ill. May 24, 1988). "In judicially fashioning rules of claim and issue preclusion, federal courts must balance the concerns underlying the doctrine of [preclusion] against the need to protect federal rights and interests." *J.D. Marshall Int'l*, 1988 WL 56287 at *2. "On the side of [preclusion] the court must weigh the concerns of judicial economy and the need to preserve the integrity of prior judgments. However, these considerations give way when the case presents nonarbitrable claims or federal rights which must be afforded a full and fair judicial proceeding." *Id.* (internal citation

omitted); *see also Greenblatt* v. *Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361 (11th Cir. 1985) (noting that the expertise of the arbitrator, his scope of authority under the arbitration agreement and procedural adequacy of the arbitration proceeding must also be considered).

1. Finality

Certainly until the arrival of the Award of the Panel, defendants had not established that the Order was a "final judgment" for purposes of res judicata. The Order had not been confirmed, nor had defendants even argued finality of the Order under arbitration rules. *See Gault* v. *Foster*, 1989 WL 44317, *1 (N.D. Ill. Apr. 21, 1989) ("We recognized that the doctrines of res judicata and collateral estoppel preclude relitigation of claims and issues adjudicated in arbitration where the district court has confirmed the award.") (citation omitted); *Hybert* v. *Shearson Lehman/American Express*, 688 F. Supp. 320, 325 (N.D. Ill. 1988) (same); G. Richard Shell, *Res Judicata and Collateral Estoppel Effects of Commercial Arbitration*, 35 UCLA L. Rev. 623, 641-42 (Apr. 1988) (noting that even where arbitration awards do not need judicial confirmation for preclusion purposes . . . "the award must be final under the applicable arbitration rules"). However, although this court now has before it the Award, it is not clear that the Award – apparently still unconfirmed – is final for preclusion purposes, because the time has presumably not run for the parties to seek either to vacate or confirm the Award in this court. Thus, defendants have not established that there was a final judgment for res judicata purposes. Because it appears that a "final judgment" is also required for collateral estoppel -- "determination of issue must have been essential to the final judgment" – the court finds that the element of finality regarding collateral estoppel is lacking. However, even if the Order or Award

9

could be considered "final" with respect to either or both res judicata and collateral estoppel, the court would deny defendants' motion for the following additional reasons.

2. Res Judicata – Privity

In order to obtain the benefit of the Panel's decision as to EQ, defendants assert that they were in privity with EQ as a matter of law based on allegations of conspiracy in Green Tree's complaint. The case cited by defendants does not support this proposition,[5] and while the court has found cases where res judicata (claim preclusion) barred a plaintiff from asserting a conspiracy claim against a new defendant named in the prior litigation but not made a party, those cases involved prior *judicial* proceedings,[6] and the rationale for applying preclusion in such cases has been recognized as the need to "encourag[e] a plaintiff to join as many defendants as possible in the first action." 18 Charles Alan Wright et. al, Federal Practice and Procedure

---

[5]The one case that defendants relied upon for this proposition, *People* v. *Condon*, 246 Ill. App. 3d 74, 615 N.E.2d 802, 185 Ill. Dec. 932 (1993) (state was collaterally estopped from opposing a defendant's motion to quash based on an earlier grant of co-defendant's motion to quash), involved an application of collateral estoppel, did not expressly base its holding on the allegation of conspiracy, and was overruled *sub silentio* by *People* v. *Franklin*, 167 Ill.2d 1, 656 N.E.2d 750, 212 Ill. Dec. 153 (1995) as to criminal cases. *See People* v. *Hall*, 279 Ill. App. 3d 602, 605, 664 N.E.2d 1122, 216 Ill. Dec. 194 (1996), explaining overruling in *Franklin* as to nonmutuality in criminal cases because "State often lacks the full and fair opportunity to litigate an issue as a result of evidentiary rules which prevent the State from presenting all of its evidence against one defendant and because of the policy of enforcement of the criminal law outweighs the need for the appearance of consistent verdicts." Similar reasoning could apply to the arbitration setting where, assuming plaintiff was trying to prove a conspiracy involving EQ, Honeywood, Guel and others, plaintiff may not have had the opportunity to present all of its evidence against EQ as to that conspiracy because nonparties (Honeywood and Guel) to the arbitration agreement are not required to arbitrate.

[6]*See Gambocz* v. *Yelencsics*, 468 F.2d 837, 841-42 (3d Cir. 1972) (prior state court case); *Gambrell* v. *Hess*, 777 F. Supp. 375, 381-82 (D.N.J. 1991) (prior federal court case); *Whitfield* v. *Carew*, 1990 WL 72621 (E.D.N.Y. May 15, 1990) (prior federal court case; RICO claim).

§ 4464 (1981). That rationale, however, is inapposite in the instant case involving an arbitration where only the parties to the agreement are bound to arbitrate. Therefore, the court finds that defendants have not established "identity of parties" for purposes of res judicata.

3.  Collateral Estoppel – Identical Issues/Issues Actually Litigated

Defendants have not established that the issue sought to be precluded in the present litigation – issue of conspiracy – was identical in the arbitration, or that the issue of conspiracy was even litigated. It is not clear that the issue of conspiracy was before the Panel. Although RICO violations, 18 U.S.C. §§ 1962 and 1964, are alleged in the Demand, the Demand does not specifically assert a RICO conspiracy violation, 18 U.S.C. § 1962(d), nor does the Demand use the word "conspiracy." Moreover, the fact that the Demand names Honeywood and Guel as part of a scheme to defraud does not necessarily mean that the issue of a conspiracy involving Honeywood and Guel was actually litigated. *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 2000 WL 283939, *8 (N.D. Ill. Mar. 14, 2000) (denying insurance-defendants' motion for summary judgment because they could not meet their burden to establish that the issues in the arbitration were identical to those in the federal case or that the precise issue was actually litigated in the prior arbitration where only "plaintiffs' claims against the broker-dealer defendants were sent to arbitration. The insurance-defendants were not parties to the arbitration and the award does not purport to address claims against them."); *Gault*, 1989 WL 44317, at *1 (declining to give preclusive effect to arbitration award because it was uncertain what claims or issues the arbitrator had actually decided and noting that claims brought indirectly against defendant, over which arbitrators had no jurisdiction, might have precluded the arbitrators from considering "any

11

number of plaintiffs' claims in which [that defendant] was used as a means to conceal defendants' alleged fraudulent dealings").[7]

4. Discretion

Finally, the court concludes that the use of preclusion based on the arbitration is inappropriate in this context. Although RICO claims are arbitrable, *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 239-42, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987), claims against nonparties to the arbitration agreement are not arbitrable, *see J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 656 F. Supp. 830, 834 (N.D. Ill. 1987), and, it has not been established that the determination of the conspiracy issue "was directly within the scope of the contractual arbitration clause," an important consideration in fashioning judicial rules of preclusion as to arbitration awards. *See Greenblatt*, 763 F.2d at 1361.[8] *See also Hybert*, 688 F. Supp. at 328 ("An arbitration cannot preclude claims over which the panel did not have jurisdiction . . . and [t]he panel was not given this jurisdiction by the 'statement of claim.'") (internal citation omitted). The court concludes that an expansion of preclusion doctrines does not warrant dismissal of plaintiff's claims in this context and, therefore, denies defendants' motion.

---

[7]Defendants also argue that the Panel did not find an intent to defraud on the part of EQ, that plaintiff's claims against defendants are all derivative of a very specific conspiracy, and that plaintiff's complaint does not properly allege any independent schemes as between defendants that do not involve EQ. Plaintiff responds that its claims against Honeywood and Guel are not dependent on a finding that EQ was not a wilful participant in the scheme. In such a case, plaintiff should be given an opportunity to prove its case against defendants. *See IDS Life Ins.*, 2000 WL 283939 at *8.

[8]Notably, although *Greenblatt* precluded litigation of RICO claims in a subsequent federal suit, the parties to both the arbitration and subsequent federal litigation were the same parties.

## CONCLUSION

For the reasons explained above, the court denies defendants' motion to dismiss plaintiff's Second Amended Complaint.

ENTER: /s/ Joan H. Lefkow
United States District Judge

Date: January 19, 2001